IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 29 2012

JULIA C. DUDLEY, CLERK
BY: /s/
  DEPUTY CLERK

| | |
|---|---|
| ROGER DEAN BANDY, | ) |
| | ) Civil Action No. 7:11-CV-00365 |
| *Plaintiff,* | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| ADVANCE AUTO PARTS, INC., | ) |
| | ) By: Hon. James C. Turk |
| *Defendant.* | ) Senior United States District Judge |
| | ) |

Plaintiff Roger Dean Bandy ("Plaintiff" or "Bandy"), filed this action alleging that he was terminated in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, by his employer, Advance Stores Company, Incorporated, a subsidiary of Advance Auto Parts, Inc. ("Defendant" or "Advance"). Advance disputes that Bandy's age played any role in his termination, instead contending that Bandy was terminated because he violated Advance's workplace policy prohibiting violence and threats of violence.

This case is presently before the Court on Defendant's Motion for Summary Judgment. ECF. No. 21. The Plaintiff responded, ECF No. 23, and the Defendant filed a reply. ECF No. 25. The Court heard oral argument on November 15, 2012, and the matter is now ripe for disposition. For the following reasons, Defendant's Motion for Summary Judgment, ECF No. 21, is **GRANTED**.

**I. Factual Background**

Bandy was employed by Advance from May 20, 1963 until his termination on October 14, 2010. During his tenure, Bandy held different positions. At the time of his termination, he was sixty-nine years old and he was working in the Defects Section of the Reclamation Department ("Defects").

1

In his Complaint, Bandy alleged several incidents of discrimination, including a 1989 "demotion" from a managerial position to a supervisor position; a 2010 transfer to Defects—which Bandy considered a demotion; and his October 2010 termination. This Court granted in part Defendant's Motions to Dismiss and to Strike, leaving only Bandy's claim for discriminatory termination in violation of the ADEA.[1] See ECF Nos. 15, 16, March 6, 2012 Memorandum Opinion and Order.

On October 13, 2010, Bandy and a co-worker, John King ("King"), were involved in what Bandy described in his Complaint as a "heated exchange related to a news story." ECF No. 1, Compl. at ¶ 28. According to Advance, both Bandy and King's conduct during the incident constituted a violation of Advance's policy prohibiting violence in the workplace, and both men were terminated as a result. At the time of his termination on October 14, 2010, Bandy was 69 years old; King was 56.

The incident was witnessed by at least two other employees, both of whom provided written statements to Advance. The first witness, Cassandra Hall, reported the incident immediately afterward to her supervisor, Barbara Myers. Hall later recounted that she was scared at what she had witnessed, that she was "very upset," and that she was so "nervous" at what had happened that she was actually "shaking" when she spoke to Myers. ECF No. 22-7, Hall Dep. at 10, 23; ECF No. 22-5, Myers Dep. at 17-18 (describing Hall as being "visibly shaken up" and "nervous" that Bandy and King "were going to come to blows"). Myers asked Hall to talk to William Greg Henderson (the manager of the Reclamation Department and Myers' immediate

---

[1] Although the Court dismissed Bandy's claims surrounding the alleged 1989 and 2010 demotions, that ruling did not preclude Bandy from introducing evidence of these events to explain his employment history or to demonstrate Defendant's alleged discriminatory animus. See ECF No. 15, Mem. Op. at 8 n.4 (citing Ze-Ze v. Kaiser Permanente Mid-Atlantic States Regions, Inc., No. 1:10-cv-959, 2011 WL 320945, at *6 (E.D. Va. Jan 28, 2011)).

supervisor), which Hall did. Hall eventually wrote a description of the events at Henderson's request. The undisputed testimony is that Henderson did not tell Hall what to put in the statement and that she was alone while she wrote it. ECF No. 22-7, Hall Dep. at 20-21; ECF No. 22-4, Henderson Dep. at 86-87.

In her written statement, Ms. Hall noted that there was "some type of argument" between King and Bandy, that the incident made her "feel very nervous and upset," and that she told Henderson "to get something done about this." ECF No. 22-1, Dep. Ex. 3, Oct. 13, 2010 Statement of Cassandra Hall. She described Bandy as "approach[ing] [King] about" something King said, and further described statements made by King to Bandy, but did not detail in her written statement anything that Bandy had said during the argument. In her deposition, she admitted that she could not hear the total conversation, but "knew it was an argument by the way they were acting." ECF No. 22-7, Hall Dep. at 8. For example, she testified that she saw Bandy shaking his fist at King. Id. at 9.[2] She further testified that she heard some of the words and specifically heard Bandy say that "he had had enough of it, of whatever was going on between the two of them." Id. She admitted in her deposition that she never heard Mr. Bandy threaten Mr. King.

After receiving the report from Ms. Hall regarding what had happened, Henderson contacted Kevin Gray, who had also witnessed the incident and had intervened. ECF No. 22-4, Henderson Dep. at 88-89. After being requested to provide a statement, Gray did so, although he explained during his deposition that he did not initially report the incident to management because he "didn't want [Bandy and King] to get fired." ECF No. 22-6, Gray Dep. at 8-9; id. at

---

[2] Henderson also noted in a memo authored shortly after Hall reported the incident to him (ECF No. 22-1, Dep. Ex. 2) that Hall witnessed King yelling to Bandy about settling an argument outside and that she saw Bandy shaking his fist at King. See ECF No. 22-4, Henderson Dep. at 87-88.

22-25 (Gray testifying that he believed the conduct of both men constituted a violation of Advance's workplace violence policy and he believed that both men would be immediately terminated "if management found out about it"). Gray's written statement, provided on October 14, described the incident as follows:

> Yesterday, on 10/13/10, John King & Maggie Schnidder [sic] were in a deep discussion, while they were working. John asked Rodger [sic] Bandy about the situation, and Bandy replied angerly [sic], he didn't want to talk about it, John replied, we are old folks, old folks argue all the time. I, Kevin Gray, asked, what is going on?
> John replied, it's about the situation in [Chile] John said that he leaves home about 5:28 pm for work, and the viewing of [Chile] was shown at that time.
> John said Rodger had the time wrong, Rodger replied are you calling me a liar? John replied, I saw at that time, Rodger replied, you want to do something about it? I[,] Kevin[,] replied, John just want a friendly debate. John replied, I'm not trying to fight you Bro., but I will take a pipe and bust your fucking head open, I don't give a fuck. Bandy replied, do it! John walked off.

ECF No. 22-1, Dep. Ex. 31, Oct. 14, 2010 Statement of Kevin Gray; ECF No. 22-6, Gray Dep. 7-9. According to Mr. Gray, he stepped in between King and Hall to prevent escalation and told the two men they needed to get back to work so no one got fired. See ECF No. 22-6, Gray Dep. 8-9; see also ECF No. 22-1, Dep. Ex. 31, Statement of Kevin Gray ("I Kevin got in the middle of the argument and said please, don't y'all fight. We have to get this work done, leave it alone!"). Gray also testified in his deposition that he believed Bandy had started the argument, and had stepped toward King and used an angry tone and that Bandy "was ready to fight King." See ECF No. 22-6, Gray Dep. at 19-21. Like Hall, Gray denied that anyone told him what to write in his statement; rather, he wrote down exactly what he saw. Id. at 21. In written statements dated October 14, 2010, both King and Bandy denied any violence, and each denied that he had threatened the other. See ECF No. 22-1, Dep. Exs. 5 & 6, Oct. 14, 2010 Statements of John King

4

and Roger Bandy. King's statement admitted an argument with Bandy, but denied that either man threatened violence, denied that either man suggested fighting, and denied that anyone stepped between him and Bandy. ECF No. 22-1, Dep. Ex. 5. Bandy's statement acknowledged that he and King had a verbal disagreement, but denied making any threats or suggesting that the men fight. Instead, Bandy explained that King used foul language and that King suggested they "go behind the green door" or the "back door" and that another employee "could look out for them." Later, King apologized and they shook hands. Id. at Dep. Ex. 6.

The four written statements (from Hall, Gray, Bandy, and King) were provided by Henderson to Michael Russell, who was the Director of Human Resources, Supply Chain. ECF No. 22-2, Russell Affidavit. Russell testified that he alone made the termination decision, that neither Bandy's nor King's age played any role in his decision to terminate them, and that he did not know their respective ages at that time. He explained that he credited the statements of Hall and Gray and did not attribute as much weight to Bandy and King's statements. Based on the witness statements, Russell believed that both Bandy and King were in violation of Advance's policy prohibiting violence or threats of violence in the workplace ("the Policy"). Id.

In pertinent part, the Policy provides:

> In order to protect our Team Members, Advance Auto Parts has a zero tolerance policy with respects to threats or incidents of violence or intimidation in the workplace. Any threats, incidents of violence, or intimidation of any nature whatsoever (including indirect threats or acts of intimidation) directed against a Team Member . . . by another Team Member will result in immediate termination.

ECF No. 22-1 Dep. Ex. 23; see also id. Dep. Ex. 21 (Bandy's acknowledgement of receipt of the handbook). Pursuant to the Policy, Russell made the decision to terminate both men.

It is undisputed that, prior to October 2010, Bandy was a good worker who received excellent performance evaluations. See ECF No. 22, Def.'s Mem. Supp. 5; ECF No. 23, Pl.'s Resp. 6-7. Bandy alleges Advance is merely using the incident with King as an excuse to terminate him because of his age. ECF No. 23, Pl.'s Resp. at 3. He also contends that his conduct during the incident did not constitute a violation of the Policy.

Advance asserts that it terminated Bandy for violating the Policy. ECF No. 22, Def.'s Mem. at 12. It argues that it is entitled to summary judgment because no reasonable fact-finder could conclude that Bandy's age was the real reason for his termination. It emphasizes and focuses on several facts to support its argument, including: (1) that Russell, the sole person who made the termination decision, avers he did not know Bandy or King and did not know either man's age; and (2) that Advance has consistently applied the Policy and terminated employees who engage in acts or threats of violence, regardless of age.

## II. Analysis

### A. Summary Judgment Standard

Summary judgment is proper where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when a rational trier of fact, considering the evidence in the record as a whole, could find in favor of the non-moving party. Ricci v. DeStefano, 557 U.S. 557, 586 (2009). "Summary judgment is appropriate only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, 'no material facts are disputed and the moving party is entitled to judgment as a matter of law.'" Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (quoting Ausherman v. Bank of Am. Corp., 352 F.3d 896, 899 (4th Cir. 2003)). Put differently, summary judgment should be entered if the Court

finds, after a review of the record as a whole, that no reasonable jury could return a verdict for the non-moving party. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 958-59 (4th Cir. 1996).

Moreover, a party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citations omitted). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48. Instead, the non-moving party must produce "significantly probative evidence" from which a reasonable jury could return a verdict in his favor. Abcor Corp. v. AM Int'l, Inc., 916 F.3d 924 (4th Cir. 1990). Thus, "[t]he summary judgment inquiry . . . scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993). "While courts must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue, summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law." Evans, 80 F.3d at 958-59.

### B. Age Discrimination Claims under the ADEA

The ADEA is violated if an employer "discharge[s] any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1) (2008). To establish an ADEA claim, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78 (2009); see also EEOC v. Clay Printing Co., 955 F.2d 936, 940 (4th Cir. 1992)

("In order to establish a cause of action under the ADEA, a plaintiff must demonstrate that <u>but for</u> the employer's motive to discriminate against the plaintiff on the basis of age, the plaintiff would not have been [adversely affected].") (emphasis added).

In this case, the Court concludes it is appropriate to apply the framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 807 (1973) to Bandy's claim.[3] Under this burden-shifting framework, an ADEA plaintiff has the initial burden to establish a prima facie case, which requires him to show that (1) he is a member of a protected class; (2) he was qualified for the job and met his employer's legitimate expectations; (3) he was terminated; and (4) he was replaced by a substantially younger individual. <u>Warch v. Ohio Cas. Ins. Co.</u>, 435 F.3d 510, 513 (4th Cir. 2006). If a plaintiff establishes his prima facie case, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason for the termination." <u>Id.</u> at 513-14. "If the employer does so, the plaintiff must then show that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." <u>Bonds v. Leavitt</u>, 629 F.3d 369, 386 (4th Cir. 2011) (internal quotation marks omitted) (quoting <u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 285 (4th Cir. 2004) (en banc)).

---

[3] The Supreme Court has squarely held that the <u>mixed-motive</u> burden-shifting scheme established for Title VII cases in <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989), is inapplicable in ADEA cases. <u>Gross</u>, 557 U.S. at 175-77. This is so because "[u]nlike Title VII, the ADEA's test does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." <u>Id.</u> at 174. The <u>Gross</u> Court, however, explicitly did not address whether the other burden-shifting scheme in employment discrimination cases—the <u>McDonnell Douglas</u> framework—was appropriate in ADEA cases. <u>Id.</u> at 175 n.2; <u>see also</u> <u>Reeves v. Sanderson Plumbing Prods.</u>, 530 U.S. 133, 141-42 (2000) (assuming, without deciding, that the <u>McDonnell Douglas</u> framework applies to ADEA claims that are based principally on circumstantial evidence). Subsequent to <u>Gross</u>, the Fourth Circuit has permitted a plaintiff to prove an ADEA discriminatory discharge claim by direct or circumstantial evidence, and has permitted the application of the <u>McDonnell Douglas</u> framework to ADEA claims. <u>See, e.g.</u>, <u>Duffy v. Belk, Inc.</u>, 477 F. App'x 91, 93 (4th Cir. 2012) (unpublished opinion). Moreover, the parties appear to agree that <u>McDonnell Douglas</u> provides the appropriate framework in this case. In any event, the Court need not get mired down in the proper framework to be applied, for the ultimate inquiry under any framework for an age discrimination in termination case remains the same: whether the plaintiff was terminated because of his age. <u>See</u> <u>Merritt v. Old Dominion Freight Line, Inc.</u>, 601 F.3d 289, 294-95 (4th Cir. 2010) ("Notwithstanding the intricacies of proof schemes," the ultimate question to be resolved is "discrimination *vel non*.") (citations omitted).

Notably, "[a]t this last step, the burden to demonstrate pretext merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." Lettieri v. Equant Inc., 478 F.3d 640, 646-47 (4th Cir. 2007) (citations and internal quotation marks omitted).

### C. Bandy's Age Discrimination Claim

Applying the foregoing principles here, the Court will assume *arguendo* that Bandy can establish a prima facie case. The Court further concludes that Defendant has met its burden of production by providing a non-discriminatory reason for Bandy's termination. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142 (2000) ("This burden is one of production, not persuasion; it 'can involve no credibility assessment.'") (quoting St. Mary's, 509 U.S. at 509). Specifically, Advance has articulated a "legitimate, nondiscriminatory reason" for Bandy's violation: Russell, who made the termination decision, believed that Bandy had violated Advance's strict policy forbidding workplace violence or threats of violence. As noted, that Policy provides that "any threats, incidents of violence, or intimidation of any nature whatsoever (including indirect threats or acts of intimidation) . . . will result in immediate termination." See ECF No. 22-1, Dep. Ex. 23. Russell based his decision on the statements of two witnesses, Hall and Gray, whose statements support a determination that Bandy violated the Policy.

Having found that Advance has met its burden of production and articulated a legitimate nondiscriminatory reason for an adverse employment action, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination vel non." Reeves, 530 U.S. at 142 (internal quotation marks and citations omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Tx. Dep't of Cmty.

Affairs v. Burdine, 450 U.S. 248, 253 (1981). Once the defendant produces a nondiscriminatory explanation, the plaintiff is afforded the opportunity to prove by a preponderance of the evidence that defendant's explanation is merely a pretext for discrimination "by showing that the employer's proffered explanation is unworthy of credence." Reeves, 530 U.S. at 143 (quoting Burdine, 450 U.S. at 256). "The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.'" Reeves, 530 U.S. at 146-47 (quoting St. Mary's, 509 U.S. at 524). "It is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." St. Mary's, 509 U.S. at 519.

Bandy argues that his termination under the Policy was merely a pretext for age discrimination. To support this argument, Plaintiff offers rationales that can be categorized into four basic arguments, which the Court will address in turn below. First, he contends that the facts surrounding the incident—and the ultimate conclusion that he violated the Policy—are in dispute. Plaintiff also argues that the incidents for which other Advance employees have been terminated are "significantly more egregious than the incident at question" in this case. ECF No. 23, Pl's Resp. at 17 (emphasis in original). Third, Plaintiff posits that there is a dispute of fact as to Henderson's level of involvement in the termination decision. He contends that Henderson had previously stated (in connection with the termination of another employee months earlier) that Advance had a policy to terminate older workers and claims that Henderson's involvement here supports an inference that the termination decision was based on age. Fourth and finally, Plaintiff advances a theory that Advance uses the Defects Section as a "dumping ground . . . for older employees who had been selected for termination." ECF No. 23, Pl.'s Resp. at 11. He

believes that Advance sent him and other older employees there with the hope that they would fail to adequately perform the more strenuous work, so they could then be terminated.

The Court will examine first the compelling evidence in the record showing that Advance's proffered reason was its true reason for Bandy's termination and not mere pretext. Then, it will address each of the four arguments offered by Bandy and show why none of Plaintiff's theories or proffered evidence are sufficient to defeat summary judgment. In short, as discussed herein, no reasonable fact-finder could look at the evidence before the Court and conclude that Plaintiff's age was the but-for cause of his termination.

### 1. Advance's Proffered Reason Is Supported By Ample Admissible Evidence

Two points are particularly salient in evaluating whether Advance's proffered reason is mere pretext for discrimination. First, the undisputed evidence shows that Advance has consistently applied its Policy and has terminated other employees at its Distribution Center who violated the Policy, regardless of age. The record reflects that, since 2008, the following individuals were all terminated after violating the Policy: (1) Ferron Wade, age 20 at the time of termination, for throwing a metal hook at a co-worker; (2) John King, age 56 at the time of termination, for his role in the incident with Mr. Bandy; (3) Alan Ragland, age 50 at the time of termination, for stating "you guys will be lucky if I don't go home and get a gun and kill someone" while on company property; (4) Ricky Weeks, age 30 at the time of termination, for pushing and threatening a coworker; and (5) Rodney Heptinstall, age 27 at the time of termination, for threatening to punch a coworker. See ECF No. 22-1, Dep. Exs. 24-28; ECF No. 22-10, Def.'s Resp. to Interrog. ¶ 15. Notably, moreover, Bandy has been unable to point to a single employee who violated the Policy and was not terminated.[4]

---

[4] Bandy alleged in his Complaint that others who had violated the policy had not been terminated. The record discloses that one of the individuals referenced by Bandy was in fact terminated. The other

11

The Court also finds it probative that Russell made the decision to terminate Bandy's employment, ECF No. 22-2, Russell Aff. at ¶ 2, and that it is not contested that Russell had no knowledge of the age of either Bandy or King.[5] See id. This fact is significant, of course, because age cannot have been the but-for cause of Bandy's termination if Russell did not know Bandy and did not know his age.[6] Instead, Russell testified that he based his decision on the statements of the witnesses, Ms. Hall and Mr. Gray, and that he did not consult with Henderson. See id. at ¶¶ 3, 6. Moreover, as even Bandy acknowledged in his deposition, it was entirely reasonable for Russell to rely on the versions of an incident set forth by disinterested witnesses, instead of the versions advanced by those involved in the incident. See ECF No. 22-3, Bandy Dep. at 113-15.

### 2. Bandy's Proffered Evidence of "Pretext" and Circumstantial Evidence of Discrimination Is Insufficient to Defeat Summary Judgment

The Court turns next to Bandy's four arguments and related evidence that he argues render summary judgment improper. As noted, his first argument is that there are disputes of fact surrounding what actually happened during the incident and as to whether his conduct actually violated the Policy. But while those facts may be in dispute, they are not "material" to the outcome of his claim. See Maracich v. Spears, 675 F.3d 281, 291-92 (4th Cir. 2012) (facts are

---

incident referenced in the Complaint involved two employees, one of whom apparently told the other twice to "shut your damn mouth" during work. As Bandy conceded at his deposition, there was no threat of violence during this latter incident. ECF No. 22-3, Bandy Dep. at 53-55. Moreover, Gray was also a witness to this, and stated that because no threats were made during that incident, he believed it was not a violation of the Policy. ECF No. 22-6, Gray Dep. at 15, 24. By contrast, Gray thought both Bandy and King violated the Policy. Additionally, it does not appear that the incident where one employee told another to "shut your damn mouth" was reported to management.

[5] Consistent with the other evidence in the record, Russell also testified that he has terminated other employees for violating the Policy and that he did not "know what the ages of these terminated people are because a person's age does not matter to me in such circumstances." ECF No. 22-2, Russell Aff. at ¶ 5.

[6] As explained by Russell, his office is not in the distribution center where the two men worked and he did not know either Bandy or King. ECF No. 22-2, Russell Aff. at ¶ 2. Likewise, Bandy testified that he did not know Russell and had no reason to think that Russell had any bias against him because of his age. ECF No. 22-3, Bandy Dep. at 14-16.

"material" for summary judgment purposes when "they might affect the outcome of the case"). Here, whether or not Bandy actually violated the Policy is immaterial to his claim. The pertinent inquiry is not whether the employee acted in a way so as to warrant termination, but whether the decisionmaker honestly believed the employee so acted. See Holland v. Washington Homes, Inc., 487 F.3d 208, 217 (4th Cir. 2007) ("[T]he uncontested evidence established that [the decisionmaker] honestly believed that [the plaintiff] deserved to be discharged . . . regardless of whether [the plaintiff] did in fact issue the threats. . . . [U]ltimately, it is the perception of the decisionmaker which is relevant.") (internal quotation marks and citations omitted); Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 444 (4th Cir. 1998) (noting that a discriminatory retaliation plaintiff failed to provide evidence that the firing supervisor even knew she had filed a claim for discrimination), overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002). Bandy offers no evidence to undermine Russell's averments that he believed Bandy had violated the Policy. Indeed, based on the witness statements provided to Russell, he reasonably believed that a violation of the Policy had occurred.

Plaintiff next argues that his role in the October 13, 2010 incident did not rise to the same level of threat or intimidation as other employees terminated by Advance for violation of the Policy. This argument, too, is unavailing. Again, "it is the perception of the decisionmaker which is relevant." Holland, 487 F.3d at 217. This Court must look to whether the decisionmaker honestly believed the plaintiff deserved to be discharged. Bandy has offered nothing that contradicts Russell's testimony that Russell believed the conduct violated the Policy and warranted termination, nor has Bandy offered anything to suggest that Russell's real reason for terminating him was his age.[7]

---

[7] Bandy's point about the egregiousness of his conduct may be valid as a matter of common sense, i.e., it might seem unwise or an extreme sanction to terminate someone for the conduct here, which did not

Plaintiff also claims that Henderson was involved in the termination decision, that Henderson "was the triggerman" in the terminations of other older employees (see ECF No. 23, Pl.'s Resp. at 8-10), and that he drafted "a 'Team Member Action Report' that laid the foundation for Mr. Bandy's termination." Id. at 15. The extent of Henderson's involvement in the decisionmaking process to terminate employees—including Bandy—is important because there is admissible evidence that Henderson previously made a statement clearly evincing discriminatory animus based on age. That is, another former employee, Homer Warren Smith, testified that at the time of his own termination (which occurred in May 2010, five months before Bandy's), Henderson (with Myers' agreement and acquiescence), told Smith that Advance had decided to terminate all employees "around or over the age of seventy." Smith Aff. ¶ 8; see also Smith Dep. 13, 30.[8] Evaluating credibility and drawing inferences in the light most favorable to the Plaintiff, the Court will assume that Henderson made this statement and that it evinces a discriminatory animus. However, "the protected trait 'must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.'" Hill, 354 F.3d at 286 (quoting Reeves, 530 U.S. at 141).

Although Bandy argues that Henderson played a significant role in the decision to terminate him, Bandy testified that he did not know who made the decision to terminate him. ECF No. 22-3, Bandy Dep. at 14-16. Instead—and significantly—the testimony from both Henderson and Russell was that Henderson was not consulted nor did he influence in any way

---

involve any physical violence and which, by all accounts, ended later in the day amicably, with Bandy and King shaking hands. But this Court does not "sit as a 'super-personnel department weighing the prudence of employment decisions' made by the defendant[]." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005) (quoting DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998)). The Court is confined instead to examining whether, on the record before it, there is sufficient evidence from which a reasonable jury could find in Bandy's favor as to his discrimination claim, and the Court concludes that there is not.

[8] Henderson and Myers both deny ever making or hearing such a statement.

Russell's decision to terminate both Bandy and King. ECF No. 22-4, Henderson Dep. at 90-91; ECF No. 22-1, Russell Affidavit. This Court must draw all reasonable inferences in the light most favorable to the Plaintiff. However, even if the Court assumes that Henderson made the statement to Smith and that the statement reflects a discriminatory animus, "the protected trait 'must have played a role in the employer's decisionmaking process and had a determinative influence on the outcome.'" Hill, 354 F.3d at 286 (quoting Reeves, 530 U.S. at 141). Here, that crucial link is lacking. As noted, it was Russell that made the decision to terminate Bandy, a fact that Bandy has not disputed.

The sole evidence Bandy offers to support his argument that Henderson somehow influenced the decision is the fact that Henderson apparently drafted the paragraph of the investigative report that set forth the conduct of Bandy. As Henderson explained, however, he drafted that at the request of Russell, the decisionmaker, after the termination decision had been made. ECF No. 22-4, Henderson Dep. at 90-91. Moreover, Bandy's reliance on Henderson's drafting of the report is misplaced because there is nothing in the statement that is contradictory to the stories told by Hall and Gray. That is, there is nothing to suggest that Henderson distorted or otherwise skewed the facts of the incident as it was told to him by the two independent witnesses. Instead, the account he provided in that report form is wholly consistent with the deposition testimony of both Hall and Gray. Nor is there any evidence that Henderson improperly influenced the investigation. See ECF No. 22-6, Gray Dep. 20-21; ECF No. 22-7, Hall Dep. 20-21.

Fourth and finally, Bandy advances a theory that Advance used the Defects Section as a "dumping ground . . . for older employees who had been selected for termination." ECF No. 23,

Pl.'s Resp. 11.[9] Plaintiff points to his own transfer to Defects in January 2010, as well as the transfer of former employees Pernal, Smith, and Mabe. Plaintiff argues that older workers were transferred to the Defects section—which they describe as a demotion based on the more strenuous work a Defects position required—so that they would struggle with their performance and could then be terminated. See id. at 8-11. He has included affidavits from some of these individuals that support his argument. For example, Mr. Pernal argues that it is his belief he (and other older employees) were transferred to Defects and to a more difficult position so that they would struggle and be terminated, and that the transfer was part of a plan to terminate his employment due to his age. ECF No. 23-3, Affidavit of Carl Pernal. Pernal was 73 at the time of his termination. Similarly, Mr. Smith has provided an affidavit and testimony that he was terminated from Advance at age 76 and that it was his belief Advance transferred him to a more onerous position (where his arthritis prevented him from performing his duties in a timely manner) so that it could terminate him due to his age. ECF No. 23-6, Smith Aff.

Advance states that Mr. Pernal and Mr. Smith were both terminated for poor performance based on a computer program that timed and evaluated their work, and that the program was applied in an age-neutral manner. Apparently, Mr. Mabe resigned upon notice of a pending transfer to Defects. ECF No. 23 at 10-11. In any event, Bandy argues that after he maintained an acceptable performance level in Defects and did not "fail" as he was expected to do, Advance needed "to find another way to terminate [him]." Id. at 12. He argues that Advance seized upon the October 13, 2010 incident with King as an excuse to terminate him.

---

[9] Bandy's claim that there was some sort of policy or conspiracy at Advance to discriminate against older workers is undercut by the fact that he never complained about age discrimination or age-related comments while employed by Advance.

Even if Plaintiff's evidence, cobbled together, could somehow lead a jury to conclude that Advance in fact had such a policy of trying to oust older workers, it still does not overcome the specific evidence related to Plaintiff's termination. See Hill, 354 F.3d at 286 (plaintiff must prove that his age "actually motivated the employer's decision" and accordingly, statements by non-decisionmakers or statements unrelated to the decision process do not suffice to satisfy the plaintiff's burden of proving discrimination). That material evidence shows that an HR manager, with no knowledge of Bandy's age, found that Bandy violated the Policy against workplace violence, which required termination under the Policy. That manager based his decision, moreover, on witness statements from two persons who Bandy does not allege had any animus against him, based on age or otherwise. Moreover, other employees of varying ages were terminated for similar conduct. Given this undisputed evidence, there is simply not sufficient evidence from which a reasonable jury could find Bandy was terminated because of his age.

For all of these reasons, the Court concludes that summary judgment in Defendant's favor is proper.

## III. Conclusion

Assuming *arguendo* that Plaintiff can establish a prima facie case of age discrimination, the Court finds that there is no genuine issue of material fact to preclude summary judgment for the Defendant. Plaintiff has failed to show that Advance's explanation that Bandy was terminated for violating its zero-tolerance workplace violence policy was merely a pretext for age discrimination. Likewise, Plaintiff offers insufficient evidence from which a reasonable factfinder could conclude that his age was the "but for" cause of his termination.

For the foregoing reasons, the Court concludes that no reasonable juror could find that Bandy was terminated because of his age. Accordingly, the Defendant's Motion for Summary judgment is **GRANTED.**

ENTER: This 29th day of November 2012.

*/s/ James C. Turk*
James C. Turk
Senior United States District Judge